IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 40230

| | |
|---|---|
| AMERICAN WEST ENTERPRISES, INC., an Idaho corporation, | Twin Falls, November 2013 Term |
| Plaintiff-Appellant-Cross Respondent, | 2013 Opinion No. 140 |
| v. | Filed: December 20, 2013 |
| CNH, LLC, | Stephen W. Kenyon, Clerk |
| Defendant-Respondent-Cross Appellant. | |

Appeal for the District Court of the Fifth Judicial District of the State of Idaho, Minidoka County. Hon. Jonathan P. Brody, District Judge.

The district court is <u>affirmed</u> in the grant of summary judgment to Respondent and <u>affirmed</u> in its denial of Appellant's request to amend complaint and is <u>reversed</u> in denial of attorney fees and costs. This case is <u>remanded</u> for the sole purpose of awarding costs and attorney fees in district court. Attorney fees and costs on appeal are <u>awarded</u> to Respondent.

Robinson, Anthon & Tribe, Rupert, attorneys for Appellant. Brent Taylor Robinson argued.

Jones, Gledhill, Fuhrman & Gourley, Boise, attorneys for Respondent. Christopher Graham argued.

SCHROEDER, J. *pro tem*

## I.

## Nature of Case

This is an appeal from the district court's grant of summary judgment to Case New Holland, Inc. ("CNH") in a suit brought by American West Enterprises ("American West") in an effort to recover the cost of a remanufactured tractor engine sold by CNH to a local seller, Pioneer Equipment Company ("Pioneer"), and purchased by American West. The district court dismissed American West's claim of implied warranty because there was no privity between American West and CNH. The district court also rejected American West's claims that it was an intended third party beneficiary of a contract between CNH and Pioneer and that Pioneer was an

1

agent of CNH. American West appeals. The district court denied CNH's request for attorney fees and costs below. CNH cross-appeals.

## II.

### Factual and Procedural Background

In August 2007, American West entered into an agreement with Pioneer to replace the engine in a Case IH 3394 tractor which American West originally purchased in 1997. Pioneer was an authorized dealer of CNH. Pioneer ordered a new engine and core from CNH and installed the engine and core on American West's Case IH 3394. In the two years following the installation of the new engine, the tractor was used for only fifteen hours. American West sold the Case tractor to Frank Jensen in the spring of 2009. Jensen used the tractor for four to five hours before the engine stopped working. American West refunded Jensen the purchase price of the tractor and took it to Pioneer to diagnose the problem. Pioneer requested CNH to warrant the tractor engine. CNH refused to warrant the engine because the time limit on any warranty had expired.

On March 18, 2011, American West filed a Complaint naming CNH as defendant, alleging breach of the implied warranties of merchantability and fitness for a particular purpose. American West demanded reimbursement for the cost of parts and labor. CNH answered and subsequently filed a motion for summary judgment, asserting that American West's claims were barred by a lack of privity between the parties. American West sought leave to amend its complaint to include claims as a third party beneficiary of an oral contract between CNH and Pioneer and that Pioneer was CNH's agent.

The district court granted CNH's motion for summary judgment and denied American West's motion to amend the complaint. The district court found that privity of contract was required to recover for economic loss in a breach of an implied warranty case and that there was no privity between American West and CNH. The district court also found that American West was not the intended third party beneficiary of the agreement between Pioneer and CNH and that American West failed to allege any facts indicating that Pioneer was the agent of CNH. The fact that Pioneer was an authorized dealer of CNH was not in and of itself sufficient to establish an agency relationship. The district court entered final judgment in favor of CNH and against American West.

2

CNH requested attorney fees and costs pursuant to I.C. § 12-120(3). The district court denied CNH's motion for attorney fees on the basis that it was unable to find a commercial transaction between CNH and American West.

American West appealed, maintaining that the district court erred when it ruled that privity of contract was required and when it denied American West's motion to amend its complaint. CNH filed a cross-appeal, maintaining that the district court erred in ruling that CNH could not recover attorney fees pursuant to I.C. § 12-120(3).

## III.

## Standard of Review

An appeal from summary judgment is reviewed under the same standard a district court uses when granting a motion for summary judgment. Under Rule 56(c) of the Idaho Rules of Civil Procedure, summary judgment is proper if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. If the evidence reveals no disputed issues of material fact, then summary judgment should be granted. In making this determination, all disputed facts are liberally construed in favor of the non-moving party. Circumstantial evidence can create a genuine issue of material fact. Inferences that can reasonably be made from the record are made in favor of the non-moving party. However, the non-moving party may not rest on a mere scintilla of evidence. If the record raises neither a question of witness credibility nor requires weighing the evidence, then summary judgment should be granted. The moving party is entitled to judgment when the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case.

*Parkwest Homes, LLC v. Barnson*, 154 Idaho 678, 682, 302 P.3d 18, 22 (2013) (internal citations and quotations omitted).

## IV.

### The District Court Did Not Err When It Ruled That Privity of Contract Was Required for American West's Breach of Implied Warranty Claim Against CNH.

The district court granted CNH summary judgment on American West's warranty action on the basis that privity of contract is required to recover for economic loss for breach of an implied warranty. There was no privity of contract between American West and CNH. The district court recognized that this Court held in *Salmon Rivers Sportsman Camps, Inc. v. Cessna Air Co.*, 97 Idaho 348, 544 P.2d 306 (1975), that there might be a situation in which the privity requirement might be removed because of unfair prejudice, but that was not this case.

3

American West argues that the privity requirement in *Salmon Rivers* was overruled in *State v. Mitchell Const. Co.*, 108 Idaho 335, 699 P.2d 1349 (1984), in which three justices expressed their view that *Salmon Rivers* was no longer valid. In *Salmon Rivers*, plaintiff brought suit alleging breach of implied warranty to recover damages sustained when their Cessna aircraft suffered a mechanical failure. *Salmon Rivers*, 97 Idaho at 348, 544 P.2d at 306. The plaintiffs challenged the district court's ruling that privity of contract must exist between it and the defendant before it could recover. *Id.* at 351, 544 P.2d at 309. This Court held that in a products liability case the plaintiff must tie the type of recovery to the legal ground for their action. This Court narrowly considered the type of action involved and limited its ruling to "whether a plaintiff may maintain an action against a manufacturer, with which it is not in privity of contract, to recover economic loss on the ground of breach of implied warranty within the contract statute of limitations." *Id.* After considering the complicated nature of warranty cases as a hybrid creature of contract and tort, this Court was convinced that the case before it presented a contract action to recover under the theory of breach of implied warranty. *Id.* at 354, 544 P.2d at 312. This rule was based primarily on the commercial nature of the action and on the principle that the implied terms of a warranty can only arise from an agreement between two or more parties. *Id.*

In *Clark v. International Harvester Company*, 99 Idaho 326, 581 P.2d 784 (1978), this Court was asked to decide whether the purchaser of a defective product may recover those damages in a negligence action brought against the manufacturer, where there was privity of contract. *Id.* This Court clarified that this case did not present the same issue as *Salmon Rivers*:

> this case is not like [*Salmon Rivers*] in which the plaintiffs sought damages for economic loss for breach of an implied warranty. In that case, we did not rule whether such damages were recoverable in a negligence action, but held that a plaintiff who was not in privity of contract with the defendant could not recover economic losses based on a breach of an implied warranty.

*Id.* at 332, 581 P.2d at 790.

In *State v. Mitchell Construction Co.*, the State brought an action to recover the cost of repair for a defective roof from its contractor, Mitchell Construction. 108 Idaho 335, 699 P.2d 1349 (1984). Mitchell brought a third party complaint against the architect, the roof subcontractors, and the subcontractor's supplier, Neogard, to indemnify its potential liability. *Id.* at 336, 699 P.2d at 1350. Mitchell and Neogard had no direct dealings with each other. *Id.* The district court ruled that economic damages cannot be recovered in a breach of implied or express

4

warranty action in the absence of privity of contract. *Id.* On appeal, this Court acknowledged the *Salmon Rivers* rule requiring privity of contract with respect to implied warranty actions, but the Court declined to address whether privity of contract was necessary for express warranty actions because Mitchell failed to allege sufficient facts indicating the existence of an express warranty. *Id.* at 337, 699 P.2d at 1351. Justice Donaldson concurred as to the result but questioned the continued validity of *Salmon Rivers*. *Id.* (Donaldson, J. concurring). He argued that the UCC was an adequate mechanism through which manufacturers could limit their potential liability to unknown users of their products by employing the disclaimer provisions of the UCC. *Id.* at 338, 699 P.2d at 1352 (Donaldson, J. concurring). Justice Huntley dissented and agreed with Justice Donaldson that *Salmon Rivers* should be overturned and also disagreed with the Court's conclusion that there was no privity of contract. *Id.* at 339, 699 P.2d at 1353 (Huntley, J. dissenting). On rehearing, Justice Donaldson and Justice Huntley continued to adhere to their positions. *Id.* at 341, 699 P.2d at 1355. However, Justice Bistline changed his opinion and dissented. Justice Bistline wrote "I now fully agree with the views earlier expressed by Chief Justice Donaldson and Justice Huntley that *Salmon Rivers* should be overruled, and so vote." *Id.* (Bistline, J. dissenting).

In *Tusch Enterprises v. Coffin*, the purchaser of duplexes brought suit against vendors seeking compensation for structural defects. 113 Idaho 37, 740 P.2d 1022 (1987). The majority in that case wrote "three members of this Court expressed the view that this privity requirement should be abolished." *Id.* at 50, 740 P.2d at 1035. The Court declined to clarify the validity of *Salmon Rivers* because *Coffin* was not a goods case. *Id.* In dicta, the majority did express a principle that if in a negligence action, negligence can be preempted by contract, then in an implied warranty case, contract principles should be given a freer hand to resolve injuries. *Id.* Justice Bistline concurred in the decision but wrote separately "to inform the trial bench and bar that the [*Salmon Rivers*] case, which is recognized as having continued but doubtful validity in the opinion for the Court, was specifically overruled in the [*Mitchell*] case . . . ." *Id.* at 51, 740 P.2d at 1036 (Bistline, J. concurring).

In *Ramerth v. Hart*, 133 Idaho 194, 983 P.2d 848 (1999), the plaintiff, a buyer and seller of an airplane, brought suit against a mechanic who had performed work on the airplane before the sale of the airplane. The plaintiff asserted claims for negligence and breach of warranty. The plaintiff had never met the defendant nor had any business dealings with the defendant. *Id.* at

197, 983 P.2d at 851. There was no contractual privity between the parties. *Id.* Nonetheless, the plaintiff argued that it should be permitted to pursue its implied warranty claim against defendant despite the lack of privity. *Id.* This Court, in a unanimous decision clarified the validity of *Salmon Rivers*:

> Despite Justice Bistline's opinion, however, the majority opinion in *Tusch* recognized the continuing validity of *Salmon Rivers . . .* We conclude, therefore, that *Salmon Rivers* remains valid. We are not persuaded that the rule announced in *Salmon Rivers* should be relaxed to allow a claim for breach of implied warranty on the facts of this case.

*Id.* at 198, 983, P.2d at 852. This Court held that the primary argument in support of relaxing the *Salmon Rivers* rule was the perception of unfairness because the economic loss rule coupled with the privity requirement might work to prevent a party from redressing their injuries. *Id.* But the Court did not find this a case in which the plaintiff was unfairly prejudiced sufficient to support further relaxation of *Salmon Rivers. Id.*

Privity of contract is required in a contract action to recover economic loss for breach of implied warranty, potentially unless the application of this rule would have the effect of unfairly prejudicing the plaintiff. *Id.*

> A plaintiff can seek recovery of damages in a products liability action for personal injury, property damage, and economic loss. Although personal injuries stand distinctly apart from the other two categories, a delineation between the latter two is necessary. Property damage encompasses damage to property other than that which is the subject of the transaction. Economic loss includes costs of repair and replacement of defective property which is the subject of the transaction, as well as commercial loss for inadequate value and consequent loss of profits or use.

*Salmon Rivers*, 97 Idaho at 351, 544 P.2d at 309.

The Idaho Court of Appeals addressed the potential to relax the *Salmon Rivers* rule on the basis of unfair prejudice in *Nelson v. Anderson Lumber Company*, 140 Idaho 702, 99 P.3d 1092 (Ct. App. 2004), holding that a party is not unfairly prejudiced where the privity requirement and the economic loss rule work to preclude a party from recovering if the party had a viable cause of action against another party. *Id.* at 711, 99 P.3d at 1101. The mere inability to be fully compensated for losses is not sufficient to relax the *Salmon Rivers* rule.

The district court did not err when it dismissed American West's breach of an implied warranty action against CNH on the basis of a lack of privity. The economic loss rule is applicable because American West only sustained economic losses. American West was not in privity with CNH. American West may have had a cause of action against Pioneer from which it

6

purchased the allegedly defective tractor engine. However, American West did not pursue any action against Pioneer, the entity with which it had direct business dealings.

## V.

### The District Court Did Not Err When It Found That American West Was Not an Intended Third Party Beneficiary of The Agreement Between CNH and Pioneer.

The district court denied American West's request to amend its complaint to assert that it was the intended third party beneficiary of Pioneer's agreement with CNH. The district court noted that there was no written contract between CNH and Pioneer to construe to determine whether American West was the intended beneficiary, but the district court was able to construe a verbal contract between the parties. There was no evidence demonstrating that the contract between Pioneer and CNH was intended for American West's benefit. The district court noted that CNH's sole purpose of providing an engine to Pioneer was to make a profit from its equipment, and that Pioneer's purpose was to procure the parts necessary to replace American West's engine for a profit. The district court ruled that American West was therefore not a direct beneficiary. (*Id.*)

> Under Idaho law [I.C. § 29-102], if a party can demonstrate that a contract was made expressly for its benefit, it may enforce that contract, prior to rescission, as a third-party beneficiary. The test for determining a party's status as a third-party beneficiary capable of properly invoking the protection of I.C. § 29-102, is whether the agreement reflects an intent to benefit the third party. The third party must show that the contract was made primarily for his benefit, and that it is not sufficient that he be a mere incidental beneficiary. Further, the contract itself must express an intent to benefit the third party. This intent must be gleaned from the contract itself unless that document is ambiguous, whereupon the circumstances surrounding its formation may be considered . . . a party must show that the contract was made for its direct benefit, and that it is not merely an indirect beneficiary.

*Idaho Power Co. v. Hulet*, 140 Idaho 110, 112–13, 90 P.3d 335, 337–38 (2004) (internal citations and quotations omitted). A party can be an intended or incidental beneficiary of an oral contract. *See Nelson*, 140 Idaho at 709, 99 P.3d at 1099. A party is not the intended third party beneficiary of subsequent contracts a contractor enters with others so as to satisfy its own obligations. *Id.* (citing 9 Corbin on Contracts § 779D (1979); Restatement (Second) of Contracts § 302, ills. 19 (1981)).

American West was in need of a new engine for its Case tractor. It contracted with Pioneer, a Case authorized retailer, for a new tractor engine. Pioneer accepted American West's

7

business and contracted with American West to replace and install a new Case engine, including $3,000 in labor fees. Pioneer was obligated to provide American West with certain benefits, and if Pioneer failed to provide those benefits, it would be liable to American West. Pioneer did not have all of the materials necessary to replace the tractor engine on American West's tractor, so it entered into a subsequent agreement with CNH to acquire an engine that Pioneer would install on American West's tractor. The agreement between Pioneer and CNH added nothing to what American West was already entitled to receive from its agreement with Pioneer. If Pioneer failed to satisfy its obligations, it would be liable. Additionally, American West failed to identify any circumstance or language demonstrating that either Pioneer or CNH expressly intended to benefit American West with their transaction. CNH sold Pioneer an engine at a profit, and Pioneer obtained an engine that it installed on a tractor for a profit. CNH provided affidavits that it was unaware of the existence of American West at the time of its transaction with Pioneer and was wholly unaware of any agreement between Pioneer and American West. American West failed to rebut that evidence.

The record supports the district court's determination that American West was not an intended third party beneficiary.

## VI.

**The District Court Did Not Err When It Found That Pioneer Was Not The Agent of CNH.**

The district court denied American West's request to amend its complaint to assert that Pioneer was an agent of CNH, because there was no evidence presented demonstrating that Pioneer was acting in any manner but in its own interests—not in the interests of CNH.

The existence of an agency relationship is a question of fact, but where the question depends on the construction of a legal instrument, the question becomes one of law. *See Idaho Lumber, Inc. v. Buck*, 109 Idaho 737, 741, 710 P.2d 647, 651 (1985); *Adkison Corp. v. Am. Bldg. Co.*, 107 Idaho 406, 409, 690 P.2d 341, 344 (1984). Express authority is the authority that a principal has explicitly granted to the agent to act in the principal's name.

> There are three separate types of agency, any of which are sufficient to bind the principal to a contract entered into by an agent with a third party, and make the principal responsible for the agent's tortious acts, so long as the agent has acted within the course and scope of authority delegated by the principal. The three types of agencies are: express authority, implied authority, and apparent authority.

Both express and implied authority are forms of actual authority. Express authority refers to that authority which the principal has explicitly granted the agent to act in the principal's name. Implied authority refers to that authority which is necessary, usual, and proper to accomplish or perform the express authority delegated to the agent by the principal

Apparent authority differs from actual authority. It is created when the principal voluntarily places an agent in such a position that a person of ordinary prudence, conversant with the business usages and the nature of a particular business, is justified in believing that the agent is acting pursuant to existing authority. Apparent authority cannot be created by the acts and statements of the agent alone.

*Bailey v. Ness*, 109 Idaho 495, 497–98, 708 P.2d 900, 902–03 (1985) (internal citations and quotations omitted).

It is generally recognized that an authorized dealer is not an agent of a manufacturer absent some quantum of control. *See Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526, 540 (D. Md. 2011) (ruling that the sole fact that dealership was an authorized Ford dealer was insufficient to demonstrate the existence of an agency relationship); *Theos & Sons, Inc. v. Mack Trucks, Inc.*, 729 N.E.2d 1113, 1122 (Mass. 2000) (holding that one party's "representation of itself as an authorized parts and service dealer of Mack is not a sufficient ground for [a party] to reasonably believe that [the other party] had apparent authority to act as Mack's agent."); *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 592 (Ill. 1997) ("Plaintiffs, in their complaint, alleged that they purchased their vehicles from authorized Suzuki dealers . . . . Such allegations alone are . . . insufficient to plead agency because they contain no facts to support a finding that the local Suzuki dealers had actual or apparent authority to act on Suzuki's behalf"); *Bruce v. ICI Americas, Inv.*, 933 F. Supp. 781, 789–90 (S.D. Iowa 1996) (ruling that there was insufficient evidence that manufacturer exercised control over authorized dealers to lead to agency relationship); *Cline v. Allis-Chalmers Corp.*, 690 S.W.2d 764, 769 (Ky. Ct. App. 1985) (holding that being an authorized dealer alone is insufficient to establish agency).

American West did not raise facts sufficient to demonstrate that Pioneer was acting as the agent of CNH. There is no contention that Pioneer had express authority from CNH. American West was the authorized dealer of CNH; CNH trained Pioneer mechanics; CNH and Pioneer jointly advertised; CNH and Pioneer were allegedly in constant communication. None of these facts demonstrate that Pioneer had any authority to act on CNH's behalf. All facts that American West asserts to support its agency argument arise from the manufacturer-authorized dealer

relationship. The manufacturer-authorized dealer relationship alone is insufficient to give rise to an agency relationship. The facts are insufficient to establish implied authority.

American West also failed to demonstrate that Pioneer had any apparent authority from CNH. A manufacturer-authorized dealer relationship alone is insufficient to give rise to an agency relationship. American West does not assert that they believed that Pioneer was acting on behalf of CNH. American West paid Pioneer to purchase and install a new engine on its tractor from CNH. American West and Pioneered requested CNH to warrant the replaced tractor engine after its failure. The request by American West and Pioneer to CNH, rather than simply American West to Pioneer, indicates that there was no apparent authority. Ultimately, American West relies entirely on the manufacturer-authorized dealer relationship for its argument of apparent authority. There is insufficient evidence to establish apparent authority.

## VII.

## The District Court Erred In Denying CNH's Request For Attorney Fees and Costs.

CNH requested attorney fees and costs pursuant to I.C. § 12-120(3), which permits the recovery of attorney fees and costs in a commercial transaction. The district court denied CNH's request for attorney fees and costs because it concluded that American West's complaint did not constitute a civil action to recover on a commercial transaction, finding that there was no commercial transaction because there existed no contract between the parties.

Idaho Code Section 12-120(3) provides for attorney fees to the prevailing party in a civil action to recover on "any commercial transaction." Commercial transactions are all transactions except for personal or household purposes. I.C. § 12-120(3). Whether there is a commercial transaction is a question of law over which the Supreme Court exercises free review. *See Great Plains Equip. v. Northwest Pipeline Corp.*, 136 Idaho 466, 470, 36 P.3d 218, 222 (2001). "Where a party alleges the existence of a contractual relationship of a type embraced by section 12-120(3) . . . that claim triggers the application of [I.C. § 12-120(3)] and a prevailing party may recover fees even though no liability under a contract was established." *Farmers Nat. Bank v. Shirey*, 126 Idaho 63, 73, 878 P.2d 762, 772 (1994). "This same principle applies where the action is one to recover in a commercial transaction, regardless of the proof that the commercial transaction alleged did, in fact, occur." *Magic Lantern Prod. v. Dolsot*, 126 Idaho 805, 808, 892 P.2d 480, 483 (1995). Idaho courts will consider whether the parties alleged the application of I.C. § 12-120. *See Fritts v. Liddle & Moeller Const.*, 144 Idaho 171, 174–75, 158 P.3d 947, 950–

51 (2007) ("[both parties] in their answer and counterclaim . . . clearly allege that I.C. § 12-120 applies."); *Cannon Builders, Inc. v. Rice*, 126 Idaho 616, 624, 888 P.2d 790, 798 (Ct. App. 1995) ("the nature of the suit, which includes a claim that Crooks was entitled to enforce the Rice-Cannon contract as a third-party beneficiary, was sufficiently based on a commercial transaction . . . .").

Though CNH and American West did not deal directly with each other, American West alleged CNH breached an implied warranty, which would be a commercial transaction. This Court has made clear that the failure of a party's claims based on a commercial transaction does not absolve a party of the attorney fees and costs that would be awarded under I.C. § 12-120. American West tried to recover on the commercial nature of a transaction: the breach of an implied warranty. It also sought to assert that it was a third party beneficiary of the commercial agreement between CNH and Pioneer. American West claimed it was entitled to attorney fees pursuant to I.C. § 12-120(3) because this was a commercial transaction. Though American West backtracked after CNH was found not liable on the alleged commercial transaction, that assertion triggered the application of I.C. § 12-120(3). CNH is entitled to attorney fees and costs below and on appeal.

## VIII.

### Conclusion

The district court is affirmed in its grant of summary judgment to CNH and affirmed in its denial of American West's request to amend its complaint. The district court is reversed in its denial of attorney fees and costs pursuant to I.C. § 12-120(3). The case is remanded to the district court for the sole purpose of finding costs and attorney fees incurred in the district court. Attorney fees and costs on appeal are awarded to CNH.

Chief Justice BURDICK, Justices EISMANN,  J. JONES and HORTON, CONCUR.

11